**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

In re Application of
BITO STORAGE SOLUTIONS US, INC.,

Case No. M-_____

For an Order to Conduct Discovery for

Use in Foreign Proceedings

**DECLARATION OF BERND H. KLOSE IN SUPPORT OF EX PARTE**
**APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, the undersigned, Bernd H. Klose, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1.      I am over the age of 18 and provide this Declaration based on my own personal knowledge.

2.      I am fluent in English and make this Declaration without the aid of a translator.

3.      I am an attorney based in Friedrichsdorf, Germany. I am counsel to BITO Storage Solutions US, Inc. ("Applicant") in Germany in the legal proceedings described below.

4.      I submit this Declaration in support of Applicant's *ex parte* application for an order, pursuant to 28 U.S.C. § 1782, for leave to serve Mr. Henry Roske (a/k/a Hendrik Roske) and H. Roske & Associates LLP (collectively, the "Discovery Targets") with subpoenas in connection with a pending criminal investigation conducted by the Public Prosecutors of Lueneburg, Duisburg, and Hamburg, Germany (the "German Prosecutors"), as well as a contemplated civil proceeding, as described below.

-1-

## Factual Background

5.      Applicant is a company in the business of storage solutions. It was incorporated under the laws of Delaware and has its principal place of business in Maryland.

6.      Applicant is a wholly owned subsidiary of BITO-Lagertechnik Bittmann GmbH ("BITO-Lagertechnik"), a German company with presence in many countries.

7.      Mr. Gustav Sandahl is the Applicant's CEO and president (the "CEO") and Mr. Henry Roske is the Applicant's secretary.

8.      Mr. Roske is a New York attorney and a managing partner of H. Roske & Associates LLP. Mr. Roske and his law firm provide services to individuals and companies from German-speaking countries in matters and activities related to conducting business in the United States. Mr. Roske is known by the names Henry Roske and Hendrik Roske, as Mr. Roske designates himself in the power of attorney attached as **Exhibit A.1**.

9.      On February 8, 2016, BITO-Lagertechnik hired Mr. Roske's law firm, previously known as Roske Schumann Burghart LLP, to incorporate Applicant.

10.     On May 31, 2016, Applicant was incorporated under the laws of Delaware. Mr. Roske has personally been serving as a secretary for Applicant since the Applicant's incorporation.

### *Applicant's Method of Money Transfers to Abroad*

11.     Applicant occasionally makes money transfers from its bank account at Wells Fargo in New York ("Wells Fargo Bank Account") to its parent company BITO-Lagertechnik's bank account in Germany when so determined by the CEO.

12.     Whenever Applicant had to make one of such transfers in the past, the CEO sent an e-mail with the transfer instructions to Mr. Roske, who was one of the authorized signers of the Wells Fargo Bank Account.

13.     Subsequently, Mr. Roske would instruct Wells Fargo to transfer funds from the Wells Fargo Bank Account to BITO-Lagertechnik's bank account in Germany.

14.     Between July 2017 and October 2019, Mr. Roske made twelve (12) money transfers from the Wells Fargo Bank Account to BITO-Lagertechnik's bank account in Germany pursuant to instructions received directly from the CEO.

15.     Relevantly, every time the CEO sent e-mail correspondence requesting that Mr. Roske effect a transfer on behalf of Applicant, said correspondence was written in English, and all transfer instructions designated BITO-Lagertechnik as the beneficiary.

16.     Since the fraudulent money transfers made in January 2020, as described in more detail below, Applicant has implemented a new method of making money transfers to abroad that does not involve Mr. Roske.

### *The Fraud*

17.     Notwithstanding the fact that the CEO had never instructed Mr. Roske to make money transfers to Port Energy Logistics GmbH ("Port Energy"), Mr. Roske made two money transfers from Applicant's bank account to Port Energy in January 2020 in the total of EUR 729,559.24 (approximately USD 821,300.03).

18.     More specifically, on January 14, 2020, Mr. Roske transferred EUR 428,709.12 (approximately USD 480,888.12) from the Wells Fargo Bank Account to a bank account in UniCredit Bank AG ("UniCredit") in Hamburg, Germany owned by Port Energy.

19.    Subsequently, on January 20, 2020, Mr. Roske transferred EUR 300,850.12 (approximately USD 340,411.91) from the Wells Fargo Bank Account to the same Port Energy bank account in UniCredit in Hamburg, Germany (together with the January 14, 2020 money transfer, the "Fraudulent Money Transfers").

20.    Neither Applicant nor BITO-Lagertechnik have ever conducted business with Port Energy. An internal investigation conducted by Applicant and BITO-Lagertechnik concluded that there was no commercial justification for the Fraudulent Money Transfers.

21.    On January 23, 2020, after being questioned about the Fraudulent Money Transfers, Mr. Roske sent an email to the CEO acknowledging that the Fraudulent Money Transfers should not have been made and informing the CEO that Mr. Roske would immediately request Wells Fargo to recall the Fraudulent Money Transfers.

***Mr. Roske's Lack of Cooperation With Applicant's Investigations to Recover the Funds***

22.    On January 27, 2020, the CEO and the head of commercial affairs of BITO-Lagertechnik, Mr. Schillinger, held a conference call with Mr. Roske to ask for clarifications regarding the Fraudulent Money Transfers. In summary, Mr. Roske stated on said conference call that: (i) he had received instructions from the CEO to make the Fraudulent Money Transfers, which the CEO immediately denied; (ii) there was a possibility that BITO's email server could have been hacked, because Mr. Roske did receive emails from the CEO with instructions to make the Fraudulent Money Transfers; and (iii) Mr. Roske was surprised with the poor German used in the emails, considering that the CEO speaks German fluently.

23.    When inquired during the conference call by the CEO and Mr. Schillinger, Mr. Roske could not explain the reason for not having asked for clarifications from the CEO about the instructions considering that (i) all previous correspondence from the CEO relating to

transfer instructions had been written in English; (ii) the email allegedly received by Mr. Roske was written in poor German; and (iii) the CEO had never instructed Mr. Roske to transfer Applicant's funds to any individual or entity other than the to BITO-Lagertechnik.

24.     Surprisingly, Mr. Roske revealed on the same occasion that he had already experienced two incidents with other clients in which Mr. Roske received wrongful instructions for money transfers. However, Mr. Roske did not provide further information about such incidents.

25.     Lastly, when asked during the conference call if Mr. Roske had sent requests to Wells Fargo for the recall of the Fraudulent Money Transfers, Mr. Roske confirmed that he had sent them. However, Applicant was able to verify with Wells Fargo on the same day of the conference call that Mr. Roske had never asked the bank to recall the Fraudulent Money Transfers.

26.     Given the conflicting information provided by Mr. Roske on the conference call and his inability to contribute information that would clarify the circumstances in which the Fraudulent Money Transfers were made, Applicant revoked Mr. Roske's authorization as a signer of the Wells Fargo Bank Account on January 27, 2020 as a safety measure until the investigations about the Fraudulent Money Transfers are concluded. Nevertheless, Mr. Roske was not removed from his position as Applicant's secretary.

27.     Since the referred conference call, Mr. Roske and H. Roske & Associates LLP have failed to cooperate with Applicant's efforts to recover the diverted funds and have not answered to any of Applicant's attempts to communicate with them.

28.     Notwithstanding Applicant's multiple requests, neither Mr. Roske nor H. Roske & Associates LLP have turned over the Applicant's file.

29.     Until this moment, Mr. Roske has not provided any of the additional information related to the Fraudulent Money Transfers requested by Applicant, including further explanation about Mr. Roske's statement to have received wrongful instructions for money transfers from two other clients in two cases similar to the Fraudulent Money Transfers.

### *The Measures Taken to Trace the Funds and To Identify the Fraudsters*

30.     Since Applicant discovered the fraudulent aspect of the Fraudulent Money Transfers, it has taken multiple measures to trace and recover the funds, such as hiring forensic investigators and attorneys specialized in financial fraud, contacting the police authorities, contributing to the criminal investigations in Germany, and sending notifications to banks used in the fraud.

31.     Applicant was able to retrieve the e-mails received and sent by Mr. Roske from the Applicant's server. The investigation conducted by the information technology forensic investigators revealed that the emails Mr. Roske had apparently received from the CEO instructing Mr. Roske to make the Fraudulent Money Transfers were actually sent by someone else, from an e-mail account outside of the Applicant's server.

32.     In addition, Applicant sent a notice to UniCredit in the form of "Mareva by letters," which sought to impose a constructive trust in favor of Applicant over the funds diverted through the Fraudulent Money Transfers and that were held by UniCredit.

33.     Further, Applicant has regularly been in contact with the German Prosecutors that are conducting the criminal investigation in Germany, as explained in more detail below. Applicant is providing to the German Prosecutors any information that might be helpful in tracing the funds and identifying the fraudsters.

34.     Lastly, Applicant has filed criminal complaints with the Federal Bureau of Investigation and the United States Attorney's Office for the District of New Jersey.

### The Pending Criminal Investigation

35.     The German Prosecutors are currently conducting a criminal investigation in Germany about the fraud involving the Fraudulent Money Transfers (file no. 7114 Js 5378/20 at the Lueneburg Public Prosecutor) (the "Pending Criminal Investigation").

36.     The process that culminated in the Pending Criminal Investigation began with the "Mareva by letters" Applicant served on UniCredit. UniCredit, in turn, filed a suspicious transaction report with the German Financial Intelligence Unit (a German government agency responsible for investigating financial crimes). Subsequently, the German Financial Intelligence Unit referred the case to the Public Prosecutor in Lueneburg, who then initiated the Pending Criminal Investigation about the fraud to trace the funds diverted from Applicant and to identify the fraudsters.

37.     In early February 2020, the Public Prosecutor of Lueneburg issued a sequestration order of the funds to UniCredit within the Pending Criminal Investigation. UniCredit's response revealed that the bank account that had received the funds from the Fraudulent Money Transfers had been emptied out by the fraudsters, and that part of those funds were subsequently transferred to a bank account in another German bank: the Stadtsparkasse Oberhausen. Due to the fraudsters' use of the bank Stadtsparkasse Oberhausen, which is located in another geographical region of Germany, the Public Prosecutors of Duisburg and Hamburg were called on to participate in the Pending Criminal Investigation.

38.     The Pending Criminal Investigation is currently in a pre-indictment stage and the German Prosecutors are open to receiving evidence.

39.     Under German law, public prosecutors are in charge of conducting criminal investigations, gathering facts, and indicting the suspects. Some criminal investigations can be commenced *ex officio* by public prosecutors, such as investigations for financial fraud or embezzlement. More specifically, under sections 158 and 406e of the German Criminal Procedural Code,[1] any person is entitled to present evidence in a criminal investigation, especially the victim of the crime, who is also entitled to communicate with the public prosecutors in charge of the investigation, to inspect the files, and to contribute any information relevant to the case. Also, under section 73c of the German Criminal Code[2] and sections 111 *et seq.*, a victim of a crime is entitled to recover its losses in a resulting criminal proceeding.

40.     The German Prosecutors have recognized in the Pending Criminal Investigation that Applicant is the victim of the financial fraud investigated, because Applicant is the party who suffered an economic loss resulting from the diversion of funds through the Fraudulent Money Transfers. Applicant is entitled to and will present in the Pending Criminal Investigation

---

[1]     Section 158 – (1) An offence may be reported orally or in writing to and a request to prosecute may be filed orally or in writing with the public prosecution office, the police authorities and police officers, and the local courts. An offence which is reported orally shall be recorded in writing. Upon application, the aggrieved person is to be provided with written confirmation of receipt of his report. Such confirmation is to include a short summary of the aggrieved person's statements regarding the time and place of commission of the offence, and of the type of offence reported. Issuance of such confirmation may be refused if the purpose of the investigation, including in relation to other criminal proceedings, appears to be jeopardized.
(2) In the case of offences which may be prosecuted only upon request, the request shall be made in writing or orally for the record to a court or to the public prosecution office; if the request is made to another authority, it shall be made in writing. […]
        Section 406e – (1) A lawyer may, on the aggrieved person's behalf, inspect the files which are available to the court or the files which would need to be submitted if public charges were preferred and he may view items of evidence in official custody if he can show a legitimate interest therein. In the cases under section 395, there shall be no requirement to show a legitimate interest. […]
(3) Applying subsections (1) and (2) accordingly, aggrieved persons who are not represented by a lawyer shall be authorised to inspect the files and, under supervision, to view items of evidence in official custody. If the files are not kept in electronic form, then instead of granting inspection of the files he may be sent copies of the files. Section 478 (1) sentences 3 and 4 shall apply accordingly. […]
[2]     Section 73c -Confiscation of value of proceeds of crime - If the confiscation of a particular object is impossible due to the nature of that which was obtained or for some other reason or because confiscation of a surrogate object has not been ordered as required by section 73 (3) or section 73b (3), the court orders the confiscation of a sum of money equal to the value of that which was obtained. The court also makes such an order in addition to confiscating an object to the extent that its value falls short of the value of that which was originally obtained.

any relevant evidence Applicant can obtain about the crime to assist the German Prosecutors to trace the diverted funds and to identify the fraudsters.

41.     Due to the lack of cooperation from Mr. Roske and H. Roske & Associates LLP, Applicant still has not had access to the documents in the Applicant's file with either of the Discovery Targets, and has not obtained all information and documents relating to the Fraudulent Money Transfers from its secretary, Mr. Roske.

42.     That information is crucial in establishing the facts surrounding the Fraudulent Money Transfers and will assist the German Prosecutors in tracing and recovering the funds, identifying the fraudsters in the Pending Criminal Investigation, and eventually indicting the suspects.

## The Contemplated Civil Proceeding

43.     Applicant expects to commence proceedings before the German Civil Court against the perpetrators and beneficiaries of the fraud to recover the funds diverted from the Applicant through the Fraudulent Money Transfers (the "Contemplated Civil Proceeding"). Applicant will file the Contemplated Civil Proceeding to recover the funds immediately after Applicant obtains sufficient information about the current location of the funds and/or the identity of the fraudsters.

44.     Applicant will file the Contemplated Civil Proceeding pursuant to section 823 of the German Civil Code, under which Applicant holds claim rights for civil liability for damages caused through either a civil wrong or a criminal act:

> Liability in damages
>
> (1) A person who, intentionally or negligently, unlawfully injures the life, body, health, freedom, property or another right of another person is liable to make compensation to the other party for the damage arising from this.
>
> (2) The same duty is held by a person who commits a breach of a statute that is intended to protect another person. If, according to the contents of the

statute, it may also be breached without fault, then liability to compensation only exists in the case of fault.

45.     The evidence sought from Mr. Roske and H. Roske & Associates LLP about the documents in Applicant's file and the facts related to the Fraudulent Money Transfers will likely reveal details that will assist the Applicant to identify the fraudsters and the location of the diverted funds, and, therefore, will increase Applicant's chances of success in recovering the funds through the Contemplated Civil Proceeding.

## **Relevance of the Requested Discovery**

46.     Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain relevant and probative documentary and testimonial evidence from the Discovery Targets for use in the Pending Criminal Investigation and in the Contemplated Civil Proceeding.

47.     Applicant seeks documents and information from the Discovery Targets generally falling within the following categories:

a.      Testimony and all documents in the possession, custody, or control of Mr. Roske concerning Applicant and/or the Fraudulent Money Transfers and/or the fraud, including internal communications with the Applicant and communications with third parties; and

b.      Testimony and all documents in the possession, custody, or control of H. Roske & Associates LLP concerning Applicant and/or the Fraudulent Money Transfers and/or the fraud, including internal communications of the firm, communications with the Applicant, and communications with third parties.

48.     The information and documents sought through this Application are for use in the Pending Criminal Investigation and in the Contemplated Civil Proceeding. In particular, the documents and information sought will assist both Applicant and the German Prosecutors to identify the fraudsters involved in the Fraudulent Money Transfers and to trace and recover the diverted funds. Therefore, the evidence sought will (i) be presented by Applicant in the Pending Criminal Investigation in order to assist the German Prosecutors to present their case in chief; (ii) be used by Applicant to recover the funds diverted through the Fraudulent Money Transfers in any criminal proceedings that result from the Pending Criminal Investigation; and (iii) be used by Applicant to institute the Contemplated Civil Proceeding before the German Civil Court as a parallel effort to recover the diverted funds.

49.     Applicant has retained my firm in Germany to represent it in connection with the Pending Criminal Investigation and in connection with the investigation, preparation, and filing of the claims against the fraudsters to recover the diverted funds in the Contemplated Civil Proceeding. Specifically, considerable time and effort has been expended in investigating the fraud, gathering evidence, corresponding with the German Prosecutors, Wells Fargo, UniCredit and other banks involved in the matter in order to develop the facts and prepare Applicant's complaint to be filed in the Contemplated Civil Proceeding. Thus, the Applicant has taken and continues to take concrete steps to proceed with the Contemplated Civil Proceeding.

50.     Upon information and belief, Mr. Roske resides at 525 E 80th St., Ph C, New York, NY. In addition, Mr. Roske regularly transacts business as Applicant's secretary and as a New York attorney at 350 Fifth Avenue, Suite 5220, New York, NY, which is the address Mr. Roske reported as his address on the outgoing wire transfer requests for the Fraudulent Money Transfers. H. Roske & Associates LLP has its headquarters at 350 Fifth Avenue, Suite 5220,

New York, NY. Thus, the Discovery Targets reside or are found in this District and, as such, are proper discovery targets pursuant to 28 U.S.C. § 1782.

51.     An online overview of the business practice of H. Roske & Associates LLP shows that the firm apparently does not operate outside the United States. Also, upon information and belief, Mr. Roske is a resident of New York.

52.     Neither Mr. Roske nor H. Roske & Associates LLP are parties or expected to become parties to the Pending Criminal Criminal Investigation. Similarly, neither Mr. Roske nor H. Roske & Associates LLP are expected to become parties to the Contemplated Civil Proceeding. Indeed, given that they reside in New York and do not appear to have contacts with Germany, Mr. Roske and H. Roske & Associates LLP will not likely be subject to the German courts' jurisdiction.

53.     Further, there is no indication the German Prosecutors, the German Criminal Court or the German Civil Court would not be receptive to the documentary and testimonial evidence sought through the instant Application. Such evidence will likely be welcomed by the German Prosecutors and will likely be admissible before the German Criminal Court and the German Civil Court. The Application does not circumvent any proof-gathering restriction under German law.

54.     The discovery sought from the Discovery Targets is not intrusive or unduly burdensome, because the document requests and the testimony sought are related to the Applicant's own file with the Discovery Targets and to the Fraudulent Money Transfers, and the document requests are limited to the period from August 8, 2015—i.e. six months before Mr. Roske's law firm was engaged to incorporate BITO—until the present.

-12-

## Conclusion

55.     In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met:

     a.  The Discovery Targets reside or are found in this District;

     b.  Applicant is an "interested person" within the meaning of the statute;

     c.  Applicant seeks to obtain documents and testimony for use in foreign proceedings; and

     d.  The Discovery Targets have relevant information concerning the fraud investigation in the Pending Criminal Investigation and the civil fraud claims that are within Applicant's reasonable contemplation in Germany.

56.     No previous claim for this relief has been made in the United States.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this _27th_ day of _April_ 2020, in _Friedrichsdorf_


By: _Bernd Klose_

Bernd H. Klose

-13-